MCCAY CORPORATION, PLAINTIFF, v. MOUNT LAUREL TOWN-SHIP COUNCIL v. A.T. GALASSO AGENCY, DEFENDANTS.

Superior Court of New Jersey
Law Division Burlington County

Decided November 26, 1984.

*John Zen Jackson* for plaintiff (*Jackson* and *Crow,* attorneys).

*Jan M. Schlesinger* for defendant Mount Laurel Township Council (*Schlesinger, Schlosser, Foy* and *Harrington,* attorneys).

*Christopher P. Leise* for defendant A.T. Galasso Agency.

HAINES, A.J.S.C.

This opinion addresses issues involved in public bidding for municipal insurance contracts. It concludes that public bidding is not required. It also concludes, however, that other statutory requirements relating to insurance coverage, as well as regulations (which sometimes require bidding notwithstanding the statutory exemption) must be followed, that they were not followed here and that an insurance contract was improperly awarded by Mount Laurel Township to the A.T. Galasso Agency.

Mount Laurel circulated "Insurance Specifications" among several insurance brokers requesting "quotations" for the cost of providing the township with insurance coverage. Public bidding procedures were not followed because it was believed that such coverage was not subject to New Jersey's bidding statutes. Four quotations were submitted, the lowest by plaintiff McCay Corporation, and the next lowest by defendant A.T. Galasso Agency. The difference between these bids was $4,872. After these quotations were received, one or more

members of Mount Laurel's governing body negotiated with the Galasso Agency and obtained an agreement to lower its quotation by $4,872. The governing body, by a three-two vote, then adopted a resolution awarding the insurance contract to Galasso. The resolution, omitting its preamble, provided, as follows:

> NOW, THEREFORE, BE IT RESOLVED that the Township Council of the Township of Mount Laurel, County of Burlington, State of New Jersey hereby accepts a proposal submitted by A.T. Galasso Agency, 1868 E. Marlton Pike, Cherry Hill, New Jersey 08003, which meets the specifications of the Township, and authorizes A.T. Galasso Agency as its broker of record to place the insurance the Township requires in accordance with its proposal with the various underwriters; and
>
> BE IT FURTHER RESOLVED that the Municipal Manager be and she is hereby authorized to sign all the necessary papers regarding the insurance program as authorized by the Township Council; and
>
> BE IT FINALLY RESOLVED that the award of the contract be subject to one of the two following conditions:
>
> 1. Reduction of the premium by the sum of $4,872.00 or
>
> 2. Clarification of the workmen's compensation premium refund program, such that the entity to which the contract is awarded can support a refund equal to or greater than the above amount.

The McCay Corporation filed this suit seeking vacation of the award on the ground that its contracting procedures were defective. Cross-motions for summary judgment raise the issues addressed in this opinion. They do not involve factual disputes and are appropriately resolved without trial.

The general requirement of the Local Public Contracts Law, *N.J.S.A.* 40A:11-1 *et seq.*, is that all municipal contracts involving a consideration of more than $4,500 shall be subjected to competitive bidding procedures. There are, however, exceptions. The one upon which the township relied in requesting "quotations" and not "bids" is found in *N.J.S.A.* 40A:11-5 which provides that contracts may be awarded without public advertising for bids and bidding if the subject matter consists of

> (m) Insurance, including the purchase of insurance coverage and consultant services, which exception shall be in accordance with the requirements for extraordinary unspecifiable services....

"Extraordinary unspecifiable services" [EUS] are defined in *N.J.S.A.* 40A:11–2(7) as "services which are specialized and qualitative in nature requiring expertise, extensive training and proven reputation in the field of endeavor." They are exempt from public bidding requirements. However, *N.J.S.A.* 40A:11–5(1)(a)(ii) provides:

> The application of this exception [EUS] shall be construed narrowly in favor of open competitive bidding, where possible, and the Division of Local Government Services is authorized to adopt and promulgate rules and regulations limiting the use of this exception in accordance with the intention herein expressed. The governing body shall in each instance state supporting reasons for its action in the resolution awarding each contract and shall forthwith cause to be printed, in the manner set forth in sub-section (1)(a)(i) of this section, a brief notice of the award of such contract. . . .

The "brief notice" to which this part of the statute refers, in accordance with paragraph (1)(a)(i) thereof, must be "printed once, in a newspaper authorized by law to publish [the governing body's] legal advertisements" and must state "the nature, duration, service and amount of the contract, and that the resolution and contract are on file and available for public inspection in the office of the clerk of the county or municipality."

A contract which is not subject to competitive bidding is, however, subject to the following provisions of *N.J.S.A.* 40A:11–6.1:

> All purchases, contracts, or agreements which require public advertisement for bids shall be awarded to the lowest responsible bidder.
>
> Prior to the award of any other purchase, contract, or agreement, the contracting agent shall, except in the case of the performance of professional services, solicit quotations, whenever practicable, on any such purchase, contract or agreement, the estimated cost or price of which is $1,000 or more, and the award thereof shall be made, in accordance with sections 3 (C. 40A:11–3) or 4 (C. 40A:11–4), as the case may be, of the Local Public Contracts Law, on the basis of the lowest responsible quotation received, which quotation is most advantageous to the contracting unit, price and other factors considered; provided, however, that if the contracting agent deems it impracticable to solicit competitive quotations in the case of extraordinary, unspecified services or in the case of such or any other purchase, contract or agreement awarded hereunder, having sought such quotations determines that it should not be awarded on the basis of the lowest quotation received, the contracting agent

shall file a statement of explanation of the reason or reasons therefor, which shall be placed on file with said purchase, contract or agreement.

The Division of Local Government Services [Division] pursuant to the authority granted by *N.J.S.A.* 40A:11–5(1)(a)(ii), adopted regulations entitled "Restricting the avoidance of competitive bidding for extraordinary, unspecifiable services." *N.J. A.C.* 5:30–14.2 The pertinent portions are as follows:

(b) General requirements limiting the use of the exception are:

. . . .

3. Avoidance of bids where any precedent exists (in the municipality or elsewhere) demonstrating the feasibility of bidding would be an unacceptable use of this provision. Services previously bid may not be classified as an EUS;

4. If specifications can be drafted covering the services, then they must be bid, notwithstanding that the other criteria of the definition may be met. In cases which may appear too technical for the local official to prepare detailed specifications for, two criteria must be addressed and found to be not possible before it may be concluded that the services cannot reasonably be described by written specifications;

i. If the contracting unit or agent does not possess the technical skill to prepare specifications, it should engage consultant assistance to do so;

ii. If the services are of such a technical or massive nature as to make a description of all actions to be taken unfeasible, or if there are available various (optional or unknown) technical methodologies for achieving the desired end, then the specifications should be drafted in terms of required end-products and/or standards of performance rather than (or in concert with) descriptions of all technical steps to be taken;

5. Services rendered as EUS must generally be characterized as not being of a continuous ongoing nature. Services which are continued or regularly repetitive shall be subject to a presumption that specifications can be drafted to describe what has been done. Where this is not the case, the contracting unit must specifically address this question;

6. Before awarding a contract under the EUS provisions, a designated administrative official of the contracting unit must file a certificate with the governing body clearly describing the nature of the work to be done, stating that it is not reasonably possible to draft specifications, describing the informal solicitation of quotations if the cost is in excess of $500 (if quotes not sought, or lowest responsible price is not observed explain this also, per *N.J.S.A.* 40A:11–6.1), and describing in detail why the contract meets the provisions of the statute and these regulations. A mere recitation of the language in the statute shall not be sufficient for this purpose. A standard certification format is available from the Division of Local Government Services and is printed in the local public contract guidelines. The certification must be kept with the resolution awarding the contract in the clerk's office;

7. If the estimated cost or price exceeds $500, quotations as to the cost or price must be solicited by the contracting agent whenever practicable, and the contract shall be made on the basis of the lowest responsible quotation, which quotation is most advantageous to the contracting unit, price and other factors considered.

The township, in awarding the bid to Galasso, did not

1. designate an administrative official to file a certificate stating that "it is not reasonably possible to draft specifications" as required by *N.J.A.C.* 5:30–14.2(b)(6),

2. obtain and file the certificate required by the foregoing regulation,

3. award the contract on the basis of the lowest possible quotation,

4. state supporting reasons for its action in awarding the contract without bids as required by *N.J.S.A.* 40A:11–5(1)(a)(ii),

5. provide an explanation of the reasons for not awarding the contract to the agency making the lowest responsible quotation pursuant to *N.J.S.A.* 40A:11–6.1, or

6. publish a "brief notice" of the award of the contract as required by the same statutory provision.

## I.

### The Bidding Requirement

McCay argues that, notwithstanding the listing of insurance coverage as an exception to public bidding requirements, the statute provides that the exception must "be in accordance with the requirements for extraordinary unspecifiable services," and these requirements include the EUS regulations adopted by the Division. These regulations include *N.J.A.C.* 5:30–14.2(b)(4), which (repeated here for easy reference) provides:

> If specifications can be drafted covering the services, then they must be bid, notwithstanding that the other criteria of the definition may be met.

It is the McCay position that specifications for Mount Laurel's insurance coverage could have been drafted and that bids were therefore necessary. Mount Laurel argues to the contrary. The contention that the Division's regulations apply to contracts for insurance is correct; the contention that bids were required in this case is not. These conclusions are based upon an analysis of legislative intent drawn from the history of the

Local Public Contracts Law and the rules of strict construction applying to that law.

The New Jersey Supreme Court, in *Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth.*, 67 *N.J.* 403 (1975), discussing *N.J.S.A.* 40A:11–1 *et seq.* said:

> Bidding statutes are for the benefit of the taxpayers and are construed as nearly as possible with sole reference to the public good. Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to serve for the public the benefits of unfettered competition. To achieve these purposes, all bidding practices which are capable of being used to further corrupt ends or which are likely to affect adversely the bidding process are prohibited, and all awards made or contracts entered into where any such practice may have played a part, will be set aside. This is so even though it is evident that in fact there was no corruption or any actual adverse effect upon the bidding process. As Justice Francis observed in *Township of Hillside v. Sternin*, 25 *N.J.* 317, 326 (1957),
>
> > In this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way. [at 409–10],

Later, in *Pucillo v. Mayor and Council of Borough of New Milford*, 73 *N.J.* 349 (1977), the Court said:

> The long-standing judicial policy in construing cases governed by the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 *et seq.*, and its predecessors, has been to curtail the discretion of local authorities by demanding strict compliance with public bidding guidelines. [at 356]

This rule of strict construction, without more, requires a reading of the statute which subjects insurance coverage to EUS regulations even though it is not an "extraordinary unspecifiable service." The regulations respond to the Legislature's invitation to the Division "to adopt and promulgate rules and regulations limiting the use of [the EUS] exception in accordance with the intention" expressed in *N.J.S.A.* 40A:11.5(1)(a)(ii). That intention is to construe the EUS exception "narrowly in favor of open competitive bidding." That construction, provided by the Division's regulations, is one of the "requirements" for EUS to which insurance coverage is subject.

The legislative history of the insurance exception provides additional support for this conclusion. The Local Public Contracts Law was adopted in 1971. It contained no insurance

exception and no reference to "extraordinary unspecifiable services." However, its definition of "professional services" included "services which are of such a qualitative nature as will not reasonably permit the drawing of specifications or the receipt of competitive bids." This language eventually developed into the present definition of "extraordinary unspecifiable services" which first appears in a 1975 amendment to the 1971 Law. The committee statement accompanying *Senate Bill* No. 3097 (the 1977 law) noted:

> The following new goods and services are added to the exempt category:
> 1. Extraordinary, unspecifiable services, subject to rules and regulations of the Division of Local Government Services, and upon adoption of appropriate resolution (previously were part of professional services)....

However, insurance coverage was not an exception to the public bidding requirement in the 1975 amendment, although other exceptions were added. *L.*1975, *c.* 353 (effective March 3, 1976 but suspended, according to a release from the Governor's office, until April 6, 1977).

A 1976 amendment did not list insurance coverage as an exception although it restored election expenses to the exempted category, probably because they were excluded through an oversight in the 1975 Law. *L.*1976, *c.* 20 (effective April 20, 1976). The present Law, with 1983 amendments which are not relevant here, was adopted in 1977. *L.*1977, *c.* 53 (effective 45 days after April 5, 1977). For the first time, the 1977 law added insurance coverage to the list of exceptions to the bidding requirements. The sponsors' statement and a release from the Governor's office concerning the 1977 law both indicate that insurance coverage need not be bid.

This history shows that, prior to 1977, municipal insurance contracts were subject either to public bidding requirements or exempt only because they were "extraordinary unspecifiable services" as defined in the 1975 law or fell within the definition of "professional services" under the 1971 law. It is very doubtful, however, that insurance coverage could have fallen within these definitions. Such coverage, for example, is not so

qualitative that it cannot be provided by many brokers and insurance companies. Nevertheless, contracts for insurance are very complex, especially when a single contract, as here, provides for numerous kinds of coverage. The complexity may make the drafting of specifications impossible. If so, public bidding is also impossible. The Local Public Contracts Law, therefore, provides insurance coverage with an exception, but a limited one: it remains subject to the rules established for EUS. Those rules require bids whenever possible and mandate them when specifications *can* be prepared. Insurance coverage, therefore, must be bid when specifications can be drawn which adequately describe municipal requirements.

The Local Finance Board of the Division of Local Government Services has promulgated *Local Public Guidelines* (1977) containing advice as to its interpretation of the provisions of the Local Public Contracts Law. It states:

Purchases, contracts, or agreements for the following things *may* be made, negotiated or awarded without public advertising for bids:

. . . .

q. Insurance coverage and related consulting services, subject to the resolution and public notice requirements of extraordinary, unspecifiable services. [at 4–8]

Interpretations of statutes by administrative agencies charged with their enforcement are entitled to deferential consideration. *Service Armament v. Hyland,* 70 *N.J.* 550 (1976). Arguably, the Local Finance Board's advisory guideline concerning the insurance exception limits its "requirements" to "resolution and public notice" respecting its use. However, the guidelines do not consider, except by indirection, the applicability of the EUS regulations to insurance coverage. They are silent as to the need for compliance, when using the insurance exception, with *N.J.S.A.* 40A:11–6.1 which requires the solicitation of quotations and an award on the basis of the lowest quotation received, absent good reasons for doing otherwise, as well as the filing of an explanatory statement. It is a general principle

that an exception to a legislative enactment must be "strictly but reasonably construed, consistent with the manifest reason and purpose of the law." *Id.* at 558–559. Further, an administrative interpretation is not conclusive; it must be overridden where it is clearly contrary to the plain meaning of the statute. *Id.* at 561–562. The guideline covering the insurance exception is not comprehensive. It does not reflect basic legislative intent. To the extent it is in disagreement with my conclusions, I am obliged to reject it.

Mount Laurel's specifications used for quotation purposes indicate the strong possibility that specifications for bidding purposes could have been drawn, thereby requiring public bidding. They are fifty pages long (including schedules) and very detailed. However, no proof addressing that issue has been presented in this case beyond the submission of the specifications themselves and council minutes containing a discussion of the difficulty of specifying workers' compensation dividends. Consequently, the claim that specifications could have been drawn cannot be decided in response to the summary judgment motions.

## II.

### Mount Laurel's Arguments

The Township argues that its contract was awarded to the low bidder, since the Galasso quotation was reduced by negotiation to equal McCay's. The argument is not persuasive. Nothing in the statute or regulations permits the amendment of quotations after they have been submitted. Were this a permissible procedure, it would discourage the submission of any quotation since the contract could always be awarded on the basis of favoritism or for some other reason not in the public interest. Approval of the technique adopted by Mount Laurel would be contrary to that interest, frustrating legislative intent as set forth in the Local Public Contracts Law.

The township suggests that the statements made by two members of its governing body in the course of the public meeting at which the resolution awarding the contract was adopted, were sufficient to satisfy the requirement of the statute that "supporting reasons" be set forth in the resolution. This argument is not convincing. The minutes merely disclose a disagreement. One member complained that the contract was not being awarded to the broker which submitted the lowest quotation. Another member argued that previous experience with McCay had not been satisfactory and that anticipated dividends from the workers' compensation carrier which it represented did not appear to be as generous as those to be expected from the Galasso carrier. The objector responded that there was no documented evidence of poor performance by McCay and that other members of council could not "come up with anything that was unsatisfactory about the company." He also pointed out that the workers' compensation information was "unsubstantiated," that McCay had not been given an opportunity to defend its proposal nor the opportunity "to respond in kind to the Galasso Agency when told that they [sic] were not the low bidder and were asked to bring their price down in line." Nothing whatsoever constituting "reasons" appears in the resolution. The governing body itself did not adopt "reasons." A member of the public reading the resolution would not know what motivated its adoption. It was clearly inadequate.

The township, addressing the possibility of its noncompliance with procedural requirements, proposes to supply any deficiencies now, pointing out that no statute or regulation specifies the time within which any omitted actions must be taken. This is not an acceptable approach. It would defeat the purposes of the statute and the regulations. In the first place, the certificate in question was required to be filed "before awarding a contract." That *is* a time restriction. It has not been met. The statute requires the "reasons" for avoiding public bidding to be set forth "in the resolution awarding each contract" and

also requires the advertisement of a brief notice of the award of the contract "forthwith." These are also time requirements which were not observed by Mount Laurel. To permit omissions to be supplied at this late hour would deny legislative intent.

■■ The Division intended, by its certificate regulation, that governing bodies be provided with careful analyses of proposals to solicit quotations instead of bids for public contracts. Governing bodies can then determine, though not always required to bid insurance contracts, whether, in fact, specifications can be prepared and whether public bidding is in the public interest. *N.J.S.A.* 40A:11–5, which sets forth the insurance exception to the public bidding requirement, provides that such contracts "*may* be made, negotiated or awarded by the governing body without advertising for bids." Emphasis supplied. "May" is to be read in the permissive not the mandatory sense. *Bell v. Western Employer's Insur. Co.*, 173 *N.J.Super.* 60, 65 (App.Div.1980).

■ The policy requiring public bidding for public contracts to protect the public interest is underlined repeatedly in the Local Government Services regulations. Consequently, when an award of an insurance contract is to be made in reliance upon the exemption from public bidding, governing bodies must scrupulously observe other requirements of the law. These rules were not observed here. The township failed to (1) have the required preliminary certificate prepared, (2) state "supporting reasons" for the award in its resolution, (3) advertise a "brief notice" of the award, (4) award the contract to the bidder submitting the lowest quotation and (5) explain its reasons for the award. These are fatal omissions.

## III.

### *Relief to be Provided*

The contract which the township awarded to Galasso provided insurance coverage for one year, commencing November 9,

1983. That year has expired. It is not appropriate to declare the insurance contract void, and I have not reached that conclusion. The township had an absolute necessity for insurance coverage and has, in fact, enjoyed that coverage by virtue of the Galasso contract. A declaration that the contract is void might well expose the township to liabilities for which it would have no coverage, a result very much contrary to the public interest and entirely outside the expectations of all parties. An appropriate remedy, therefore, must be fashioned. The question of remedy has not been briefed. It is sufficient therefore to grant the motion of McCay for a partial summary judgment establishing the impropriety of the municipal procedures, to deny the cross-motion of the township for summary judgment and to reserve for further argument and decision the question of consequences.