605 A.2d 1154

LOCAL 1081 OF THE COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, DAVID WEINER, ANTHONY CUCCHIARO, PLAINTIFFS–APPELLANTS, v. ESSEX COUNTY, ESSEX COUNTY BOARD OF CHOSEN FREEHOLDERS, AND NICHOLAS AMATO, COUNTY EXECUTIVE, AND RASMUSSEN AGENCY, INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 10, 1992—Decided April 23, 1992.

Before Judges MICHELS, O'BRIEN and CONLEY.

*Steven P. Weissman,* District Counsel, Communications Workers of America, AFL–CIO, argued the cause for appellants.

*Norman Schulaner,* Assistant County Counsel, argued the cause for respondents County of Essex and Thomas J. D'Alessio, Essex County Executive (*Stephen J. Edelstein,* Essex County Counsel, attorney; *Norman Schulaner,* on the brief).

*Robert John Aste* argued the cause for respondent Rasmussen Agency, Inc. (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Elliott Abrutyn,* of counsel; *Robert John Aste,* on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

Plaintiff Union, which represents certain employees and the individual plaintiffs, both employees of the Essex County Division of Welfare and officers of the Union, appeal from a summary judgment authorizing the award of a contract to administer the County's health benefit plan to the intervening defendant Rasmussen Agency, Inc. (Rasmussen) without public advertising and bidding.[1] We affirm in part and remand for further proceedings.

---

[1] The order for summary judgment was granted only to Rasmussen and contains no other disposition as to the County, the Board of Freeholders and the County Executive. We assume the order was intended to dismiss plaintiffs' complaint against the other defendants as well.

The Essex County Employee Health Benefits Self–Funded Plan (the Plan) is administered by Rasmussen under a current contract approved September 26, 1990 by resolution of defendant Essex County Board of Freeholders, for a term from July 1, 1990 until July 1, 1991. As administrator, Rasmussen provides complete management, general administration, claim processing, required investigations, statistical services, and assistance in the procurement of reinsurance coverage under the terms and conditions of the agreement. The contract was awarded to Rasmussen without public advertising or bidding for one year expiring July 1, 1991. Plaintiffs contend this was in violation of the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to 24.

Defendants respond that the Plan, which also provides for reinsurance, is an exception to the requirement for public advertising and bidding pursuant to *N.J.S.A.* 40A:11–5(1)(m), which provides as follows:

> Any purchase, contract or agreement of the character described in section 4 of this act may be made, negotiated or awarded by the governing body without public advertising for bids and bidding therefor if
>
> (1) The subject matter thereof consists of
>
> .     .     .     .     .     .     .     .
>
> (m) Insurance, including the purchase of insurance coverage and consultant services, which exception shall be in accordance with the requirements for extraordinary, unspecifiable services.

Plaintiffs rejoin by arguing that this exception requires the Plan to meet the requirements of *N.J.S.A.* 40A:11–5(1)(a)(ii), which provides that the exception for extraordinary, unspecifiable services (EUS) requires:

> The application of this exception shall be construed narrowly in favor of open competitive bidding, where possible, and the Division of Local Government Services is authorized to adopt and promulgate rules and regulations limiting the use of this exception in accordance with the intention herein expressed. The governing body shall in each instance state supporting reasons for its action in the resolution awarding each contract and shall forthwith cause to be printed, in the manner set forth in subsection (1)(a)(i) of this section, a brief notice of the award of such contract.

Thus, the appeal requires a construction of these statutory provisions and the regulations adopted pursuant thereto.

Historically, the County decided in 1988 to withdraw from the State of New Jersey's Health Benefits Program and sought proposals for the establishment of its own self-funded Health Benefits Program.[2] Rasmussen proposed a plan whereby the Health Benefits Program would be self-funded by the County, but reinsured to protect it from catastrophic losses. Under the proposed plan, Rasmussen would serve as third-party administrator of claims and benefits, thereby eliminating the cost of hiring additional county employees. The cost of the proposal included the cost of program administration at $408,252 and reinsurance premium at $176,800.

The Acting Director for Administration and Finance of the County forwarded the Rasmussen proposal to the County Administrator without competitive bidding under his certification that it was an exception under *N.J.S.A.* 40A:11–5(1)(m) and recommending Rasmussen because of its vast experience. The County adopted a resolution approving the contract, stating that it was awarded without public bidding as a contract for insurance and insurance consulting services. The resolution further provides in relevant part:

> WHEREAS, the County of Essex has a need for consultation services to assist the County in administering an Employee Health Benefit Self Funded Plan; and

---

[2] It is not clear from the record from whom the proposals were sought or received and the details including the cost of the other proposals submitted. If the solicitation of proposals was pursuant to *N.J.S.A.* 40A:11–6.1, the County was required to accept the lowest responsible quotation received, which quotation is most advantageous to the County, price and other factors considered, unless the County deems it impracticable to solicit competitive quotations, or having sought such quotations determines it should not be awarded on the basis of the lowest quotation received, in which event the County must file a statement of explanation of the reason or reasons therefor, which shall be placed on file with the purchase contract or agreement. It does not appear that these requirements were complied with in 1988, or that such quotations were even sought in succeeding years. The contract under review was awarded in September 1990.

WHEREAS, insurance consultation services shall include complete management including general administration, claim processing and required investigation, statistical services and procurement of reinsurance coverage; and

WHEREAS, an agreement has been negotiated by the County Executive of Essex County, through the Administration and Finance Agency, with Rasmussen Agency Inc., a corporation, for the performance of such insurance consulting services, said contract amount not to exceed $585,052.00; and

. . . . . . . .

WHEREAS, such insurance and insurance and consultation services are excepted from public bidding under *N.J.S.A.* 40A:11–5(1)(m) and *N.J.A.C.* 5:30–14.2;

. . . . . . . .

This contract is awarded without competitive bidding as insurance and insurance consulting services. . . .

That contract ran for a term of one year from July 1, 1988 to July 1, 1989, and was renewed under identical terms for the term from July 1, 1989 to July 1, 1990. It was again renewed by the contract under review running from July 1, 1990 to July 1, 1991.[3]

Both parties agree that insurance is one of the exceptions to the requirement for public advertising and bidding under *N.J.S.A.* 40A:11–5(1)(m). The plain language of that section provides that the exception "shall be in accordance with the requirements for extraordinary, unspecifiable services." Plaintiffs argue that because of the reference to EUS in the insurance exception, all of the language of *N.J.S.A.* 40A:11–5(1)(a)(ii) applies, namely, that it be construed narrowly in favor of open competitive bidding, where possible, and that certain rules and regulations adopted by the Division of Local Government Services (Division) apply. Plaintiffs rely upon regulations restricting the avoidance of competitive bidding for EUS as delineated in *N.J.A.C.* 5:30–14.2, such as, *N.J.A.C.* 5:30–14.2(b), which reads in pertinent part as follows:

---

[3]Presumably, on July 1, 1991, the contract was renewed for another one-year period until July 1, 1992.

General requirements limiting the use of exceptions are:

   .     .     .     .     .     .     .     .

4. If specifications can be drafted covering the services, then they must be bid, notwithstanding that the other criteria of the definition may be met. In cases which may appear too technical for the local official to prepare detailed specifications for, two criteria must be addressed and found to be not possible before it may be concluded that the services cannot reasonably be described by written specifications:

    i. If the contracting unit or agent does not possess the technical skill to prepare specifications, it should engage consultant assistance to do so;

    ii. If the services are of such a technical or massive nature as to make a description of all actions to be taken unfeasible, or if there are available various (optional or unknown) technical methodologies for achieving the desired end, then the specifications should be drafted in terms of required end products and/or standards of performance rather than (or in concert with) descriptions of all technical steps to be taken;

5. Services rendered as EUS must generally be characterized as not being of a continuous ongoing nature. Services which are continued or regularly repetitive shall be subject to a presumption that specifications can be drafted to describe what has been done. Where this is not the case, the contracting unit must specifically address this question; ...

The succeeding language in subsection (b) sets forth the procedure to be followed, including obtaining quotations. Subsection (c) of this regulation sets forth examples of services tentatively acceptable as EUS, provided that all of the criteria of subsection (b) of this section are met.

In its brief, the County argues:

The County agrees that application of these criteria for services to qualify as EUS to the purchase of insurance would have barred the County's negotiation of the Rasmussen contract and would, in effect, eliminate insurance entirely as an exception from bidding in that practically all insurance is of a continuing nature and can be described by written specifications. Such result would clearly be violative of the intent of the Act and the regulations thereunder.

Reference is then made to the legislative history of the enactment, indicating the intention to exempt insurance contracts apart from the requirements of EUS.

The County further notes that the local Finance Board of the Division of Local Government in its "Local Public Guidelines" (1977), advising as to its interpretation of the provisions of the Local Public Contracts Law states:

> Purchases, contracts, or agreements for the following things *may* be made, negotiated or awarded without public advertising for bids;

> •   •   •   •   •   •   •   •

> q.  Insurance coverage and related consulting services, subject to the resolution and public notice requirements of extraordinary, unspecifiable services.

The County then argues that the replacement of the regulations in *N.J.A.C.* 5:30–14.2, by *N.J.A.C.* 5:34–2.4, makes it clear that the Division interprets the legislation to exempt insurance. *N.J.A.C.* 5:34–2.2, containing the general requirements limiting the use of the exception, no longer refers to whether specifications can be drafted covering the services, nor to services characterized as not being of a continuous ongoing nature or regularly repetitive.   Finally, *N.J.A.C.* 5:34–2.4 provides, as examples for purposes of guidance:

> (a) The Division believes that the following services satisfy all the criteria for an EUS and they are therefore listed as examples for purposes of guidance:

> •   •   •   •   •   •   •   •

> 8.  Insurance, including the purchase of insurance coverage and consultant services.

It is argued that the amended regulations might have been in answer to Judge Haines' opinion in *McCay Corp. v. Mt. Laurel Tp. Council,* 203 *N.J.Super.* 550, 497 *A.*2d 570 (Law Div.1984).

In *McCay,* Judge Haines agreed that insurance was an exception to public bidding, but must be in accordance with the requirements for EUS, which at that time required that, if specifications can be drafted, the services must be bid, notwithstanding that the other criteria of the definition may be met. The judge then concluded that insurance coverage must be bid when specifications can be drawn which adequately describe the municipal requirements.

The defendants concede in this case that, as reflected by the succession of contracts, the services are continuing and repetitive and that specifications could be drafted as to the County's requirements, particularly after the services have been rendered pursuant to a plan.   However, it is argued that this

construction and the language of the now repealed administrative regulations is not in keeping with the legislative intent.

Notwithstanding that the legislation has not been amended concerning insurance as an exception to the public advertising and bidding requirements, the regulations have been drastically changed to reflect what the Division considers to be the legislative intent. This change in interpretation, unfortunately, occurred subsequent to the contract under review, but prior to the contract now in existence between the parties. Because of that circumstance, we perceive no useful purpose in attempting to construe the statute before the recent repeal of the administrative regulations contained in *N.J.A.C.* 5:30–14.2 and promulgation of new regulations in *N.J.A.C.* 5:34–2.3 and 2.4.

Further, at oral argument, plaintiffs' counsel noted that among the exceptions in *N.J.S.A.* 40A:11–5(1), other than professional services and EUS in (a)(i)(ii), two other sections conclude with the language, "which exception shall be in accordance with the requirements for extraordinary, unspecifiable services." One is insurance under subsection (1)(m) and the other is equipment repair service under (1)(i), which reads as follows:

> Equipment repair service if in the nature of an extraordinary, unspecifiable service and necessary parts furnished in connection with such service, which exception shall be in accordance with the requirements for extraordinary, unspecifiable services.

We agree that this language, "which exception shall be in accordance with the requirements for EUS," is significant in that both of these subsections require that the exception be in accordance with the requirements for EUS. However, it appears that language means the procedural requirements of EUS, *i.e.*, to state supporting reasons for its action in the resolution awarding each contract and forthwith cause to be printed in the manner set forth in the professional services subsection a brief notice of the award of such contract. However, in the case of equipment repair service, it has to be determined to satisfy all the criteria for an EUS because of the

language, "if in the nature of an extraordinary, unspecifiable service," whereas in the case of insurance this language is omitted, undoubtedly because, as the Division believes, insurance *does* satisfy all of the criteria for an EUS by its inclusion in the list of examples for purpose of guidance in *N.J.A.C.* 5:34–2.4.

■ We therefore conclude that insurance, including the purchase of insurance coverage and consultant services, is an exception by virtue of *N.J.S.A.* 40A:11–5(1)(a)(ii) and (1)(m), and thus does not require public advertising and bidding, but requires the public agency to state supporting reasons for its action in the resolution awarding each contract and to forthwith cause to be printed once, in a newspaper authorized by law to publish its legal advertisement, a brief notice stating the nature, duration, service and amount of the contract, and that the resolution and contract are on file and available for public inspection in the office of the Clerk of the County. It is not alleged that the County has not complied with these procedural requirements.

■ The plaintiffs also argue that only the reinsurance portion of the agreement with Rasmussen should come within the exception and not the administration of the Plan. We disagree, since the plan is one integrated program for the provision of employee health services to be funded by the County with a reinsurance plan to cap the liability exposure.[4] The reinsurance is only a small portion of the Plan with the County acting as its own primary insurer and Rasmussen providing the services normally performed by an insurer such as administration, claims review and processing and statistical services.

---

[4]However, we note that, although the liability of the County for an individual eligible employee is limited to $150,000 with a reinsurance of up to $1,000,000, the cost for all benefit payments cannot exceed $10,917,970, again though with reinsurance only up to an additional $1,000,000.

■ However, these conclusions do not end our inquiry. *N.J.S.A.* 40A:11–6.1, reads as follows:

All purchases, contracts or agreements which require public advertisement for bids shall be awarded to the lowest responsible bidder.

Prior to the award of any other purchase, contract or agreement, the contracting agent shall, except in the case of the performance of professional services, solicit quotations, whenever practicable, on any such purchase, contract or agreement the estimated cost or price of which is $1,000 or more, and the award thereof shall be made, in accordance with section 3(C. 40A:11–3) or 4(C. 40A:11–4), as the case may be, of the Local Public Contracts Law, on the basis of the lowest responsible quotation received, which quotation is most advantageous to the contracting unit, price and other factors considered; provided, however, that if the contracting agent deems it impracticable to solicit competitive quotations in the case of extraordinary, unspecifiable service, or, in the case of such or any other purchase, contract or agreement awarded hereunder, having sought such quotations determines that it should not be awarded on the basis of the lowest quotation received, the contracting agent shall file a statement of explanation of the reason or reasons therefor, which shall be placed on file with said purchase, contract or agreement.

The award of any purchase, contract or agreement properly characterized as being EUS, is subject to *N.J.S.A.* 40A:11–6.1. *Burlington Tp. v. Middle Dept. Inspection Agency*, 175 *N.J.Super.* 624, 630, 421 *A.*2d 616 (Law Div.1980). In *McCay*, Judge Haines concluded that a contract not subject to competitive bidding is subject to the requirements of *N.J.S.A.* 40A:11–6.1. We agree. From the record before us we are unable to ascertain whether the requirements of *N.J.S.A.* 40A:11–6.1 were met, and the trial judge did not address this question in his decision. *See* footnote 3, *supra.* Accordingly, the matter must be remanded for a determination as to whether the provisions of *N.J.S.A.* 40A:11–6.1 have been met. On the remand, the judge shall determine whether the current contract with Rasmussen is the same as the previous contracts, which we have concluded are EUS. He will then inquire as to the circumstances concerning the solicitation of quotations as required by *N.J.S.A.* 40A:11–6.1, *i.e.*, from whom sought, the terms, including estimated cost or price, and if Rasmussen was not the lowest responsible quotation, why its proposal was accepted, or if no quotations were sought, why it was impracticable to do so. The judge must also address the question as to

whether quotations were solicited annually before the renewal of the contract and, if not, whether solicitation prior to the original 1988 contract constitutes full compliance with *N.J.S.A.* 40A:11–6.1.

The determination by the trial judge, that the contract is an exception to the public advertising and bidding procedures, is affirmed. However, the matter is remanded to the trial judge to determine whether or not the provisions of *N.J.S.A.* 40A:11–6.1 have been met. We do not retain jurisdiction.